```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
_____
                              )
RONALD SHAMON and PATRICIA SHAMON, )
     Plaintiffs,             )
                              )
v.                            ) Docket No. 04cv11674-WGY
                              )
UNITED STATES OF AMERICA,     )
     Defendant.               )
_____)
```

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR EXAMINATION OF PLAINTIFF RONALD SHAMON

Defendant, pursuant to Fed. R. Civ. P. 35, hereby submits this Memorandum of Law in Support of its Motion for Examination of Plaintiff Ronald Shamon.  Defendant requests that the Court order Plaintiff to submit to a physical examination by James M. Richter, M.D., a doctor of internal medicine and gastroenterology and, specifically, an expert in gastrointestinal endoscopy and the treatment of colon disease and pain.  In support of this request, Defendant states that Plaintiff has placed his physical condition in controversy and there is good cause for the examination.

### INTRODUCTION

I.   **Relevant Background**

Plaintiffs, Ronald and Patricia Shamon, bring this action against the Government pursuant to the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., to recover for personal injuries allegedly incurred as a result of a sigmoidoscopy procedure performed at a Veteran Affairs ("VA") hospital on

December 7, 2001.[1]  Complaint ¶¶ 1, 27.  Specifically, Plaintiff Ronald Shamon alleges, *inter alia,* that while performing the sigmoidoscopy procedure, then VA staff member, Chi Zhang, M.D., negligently perforated his rectum with a scope instrument, which caused Plaintiff to later develop perirectal abscesses.  Complaint ¶¶ 9, 16, 27.  Plaintiff alleges that as result of the VA's alleged negligence, he has suffered "a rectal perforation, loss of muscle control, and <u>permanent considerable pain and discomfort in the rectal area</u>, and extreme pain, suffering, and embarrassment."  Complaint ¶ 27 (emphasis added).

Defendant served interrogatory questions on Plaintiff on or about January 21, 2005.  In response to Defendant's Interrogatory Number 2,[2] Plaintiff stated:

> Because my injuries are <u>permanent</u> in nature, I have not been treated by any physician for the specific injuries caused by the negligent treatment alleged in my complaint following my

---

[1] Mrs. Shamon claims loss of consortium.  Complaint ¶¶ 29-31.

[2] Defendant's Interrogatory Number 2 stated: "Please identify each medical professional, other than those who are employed by the VA, who has treated, examined, or in any other way consulted with you regarding any injuries, symptoms, illnesses, conditions or disabilities, whether physical, mental, or emotional, purportedly caused by negligent treatment alleged in your Complaint.  For each professional, please identify:
- a.  Their full name, business address, and medical qualifications;
- b.  A summary of the treatment, examination, or consultation;
- c.  Any documentation or report made by a treating, examining, or consulting physician;
- d.  All bills concerning such treatment, examination, or consultation."

discharge from the VA Hospital.

See Plaintiff Ronald Shamon's Objections and Responses to Defendant's Interrogatories, Interrogatory ("Plaintiff's Response to Interrogatory") No. 2 (emphasis added), attached hereto as Exhibit A. In response to Defendant's Interrogatory Number 3,[3] Plaintiff stated in part:

> I am also required to use ball of cotton after each bowel movement, and I will need to bathe (shower) my rectum after each bowel movement for the remainder of life. Further, I will always need to use a "doughnut" to sit on because of scar tissue that developed following the multiple surgical procedures that I underwent following the sigmoidoscopy procedure in question. I can only drink two to three glasses of water or liquids each day to lessen mucous discharge that occurs several times a day.

See Plaintiff's Response to Interrogatory No. 3 (emphasis added). In response to Defendant's Interrogatory Number 4,[4] Plaintiff

---

[3]Defendant's Interrogatory Number 3 states: "If you at any time took or currently take any medications, prescription or otherwise, as a result of any injury, symptom, illness, condition or disability, whether physical, mental, or emotional, sustained due to the negligence alleged in your Complaint, state:
  a. the name of each medication;
  b. whether the medication requires a prescription;
  c. the name of the physician recommending or prescribing the medication;
  d. the condition for which the medication is or was taken; and
  e. the dates on which you began and finished taking the medication."

[4]Defendant's Interrogatory Number 4 states: "Describe in detail all injuries, symptoms, illnesses, conditions or disabilities, whether physical, mental, or emotional, which you have experienced since the negligence treatment alleged in your Complaint, and which you claim to have been caused, aggravated, or otherwise contributed to by the alleged negligent treatment, stating when such injuries, symptoms, illnesses, or disabilities

stated in part:

> My stamina has also greatly decreased. For example, I am <u>no longer</u> able to pick up heavy objects, and I experience groin pain and shortness of breath walking up or down stairs or doing minor chores both in and out of the house. . . . In addition, I cannot wipe my rectal area normally (it takes five to ten minutes to carefully and gently pat this area to avoid intense pain and possible bleeding), and this procedure is <u>always</u> uncomfortable. Furthermore, the injury to my sphincter has caused me to frequently pass gas. These events are uncontrollable and unpredictable . . . .

<u>See</u> Plaintiff's Response to Interrogatory No. 4 (emphasis added). In response to Defendant's Interrogatory Number 5,[5] Plaintiff stated that "[he has] not recovered from the symptoms, illnesses and disabilities set forth in [his] Answer to Interrogatory No. 4." <u>See</u> Plaintiff's Response to Interrogatory No. 5. He also stated in response to Defendant's Interrogatory Number 6[6] that "all of the injuries, symptoms and disabilities identified in [his] Answer to Interrogatory No. 4 are permanent." <u>See</u>

---

first manifested themselves."

[5]Defendant's Interrogatory Number 5 states: "With respect to each claimed injury, symptom, illness, condition or disability set forth in response to Interrogatory Number 4, state whether or not you have now recovered therefrom, and, if so, state the approximate date of such recovery."

[6]Defendant's Interrogatory Number 6 states: "If you contend that any injury, symptom, illness, or disability resulting from the negligence alleged in your Complaint is permanent, state with respect to each such injury, symptom, illness or disability:
    a.   the specific medical reason(s) for that answer;
    b.   the extent of each injury, symptom, illness, or disability which you claim to be permanent; and
    c.   whether you claim that your ability to work will be impaired thereby and, if so, the manner in which your ability will be impaired."

Plaintiff's Response to Interrogatory No. 6.

During his deposition, Plaintiff made similar claims concerning the nature and extent of his allegedly current physical injuries. Indeed, Plaintiff testified that he is suffering from permanent damage to the sphincter muscle in his rectum, permanent scar tissue on his anus, and other permanent physical injuries. See Deposition of Ronald Shamon ("Shamon Dep.") at pp. 102-103, 111-113, 115, 118-124, 125, relevant pages attached hereto as Exhibit B. Other than his own representations, Plaintiff, however, has proffered no documentary evidence supporting the existence of the permanent injuries he has identified.

**II.  The Examination**

Defendant seeks to have Dr. James M. Richter examine and interview Plaintiff to explore the extent of Plaintiff's physical injuries, which he claims are permanent. Dr. Richter is board certified in the areas of internal medicine and gastroenterology. He is on staff at Massachusetts General Hospital and treats patients suffering from gastrointestinal disease and pain. See Resume of James M. Richter, M.D., attached hereto as Exhibit C. In this case, Defendant has retained Dr. Ritcher as an expert to formulate opinions as to (i) the existence of the injuries identified by Plaintiff in his responses to Defendant's interrogatory questions and during his deposition, and (ii) the

extent of those injuries, that is, whether these injuries are permanent in nature.

In order to properly formulate opinions on these issues, Dr. Richter must know and understand the circumstances surrounding the flexible sigmoidoscopy procedure performed at the VA Hospital on December 7, 2001, the treatment Plaintiff received at the VA and other private hospitals thereafter, and the nature and extent of Plaintiff's alleged injuries.  Dr. Richter has requested that, in addition to a review of Plaintiff's medical records, he have the opportunity to examine the Plaintiff in a suitable room at Massachusetts General Hospital.  This examination would include, *inter alia*, external examination of the anus, digital examination, and examination of the colon via a flexible scope. Based on Plaintiff's own deposition testimony, he has undergone several rectal examinations since December 7, 2001, without incident and without any worsening of his alleged current condition.  See Shamon Dep. at pp. 104-107.

Should the Court grant this Motion, Defendant will schedule the examination at a time most convenient for Plaintiff, taking into consideration the demands on Dr. Richter's schedule.

**ARGUMENT**

**I.   Standard of Review**

Fed. R. Civ. P. 35(a) provides in pertinent part as follows:

> When the mental or physical condition of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner. . . .  The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Before a Court may order a plaintiff to submit to a physical examination, Rule 35(a) requires that the physical condition of the plaintiff be "in controversy" and that the party seeking the mental examination show "good cause" therefor.  <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118 (1964); <u>accord</u>, <u>Anderson v. Cryovac, Inc.</u>, 805 F.2d 1, 8 (1st Cir.1986); <u>Sacramona v. Bridgestone Firestone, Inc.</u>, 152 F.R.D. 428, 431 (D.Mass.1993).  The physical condition of the plaintiff in this case is "in controversy" and "good cause" exists for this examination.

In <u>Schlagenhauf v. Holder</u>, 379 U.S. at 118, the petitioner was the driver of a Greyhound owned bus involved in a collision with a tractor-trailer owned by Contract Carriers, Inc. ("Contract") and National Lead Co. ("National") and driven by Joseph L. McCorkhill ("McCorkhill").  Passengers on the bus brought a diversity action against these parties as defendants.  As part of its answer to Greyhound's cross-claim, Contract

alleged that Schlagenhauf was "not mentally or physically capable" of driving the bus when the accident occurred. Id. at 107. Then, Contract and National petitioned the District Court for an order requiring Schlagenhauf to submit to both a physical and a mental examination. Id. The United States Supreme Court stated "that the deposition--discovery rules are to be accorded a broad and liberal treatment" and that "civil trials in the federal courts no longer need to be carried on in the dark." Id. at 114-15, citing Hickman v. Taylor, 329 U.S. 495, 501, 507 (1947).

The Court went on to state that "good cause" cannot be satisfied by the mere showing of relevance or mere conclusory allegations in the pleadings, but that "good cause" under Rule 35 requires a greater showing than under other discovery rules. Schlagenhauf, 379 U.S. at 117-18. The Court stated as to "in controversy" and "good cause" that they require affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Id. What may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant. "Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case,

whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements . . . are necessarily related." Id. at 118-19.  The Court further stated:

> Of course, there are situations where the pleadings alone are sufficient to meet these requirements.  <u>A plaintiff in a negligence action who asserts mental or physical injury. . . places that mental or physical injury clearly in controversy . . . provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.</u>

Id. at 119 (emphasis added); see also Nyfield v. Virgin Islands Telephone Corp., No. 1999/202, 2001 WL 378858, at *1 (D. VI Apr. 17, 2001).  Rule 35(a) is to be construed liberally in favor of granting discovery.  Cody v. Marriott Corp., 103 F.R.D. 421, 422 (D. Mass. 1984).  Where a plaintiff has affirmatively placed in controversy his physical condition, it is appropriate for a court to order an examination.  Cf. id. at 423.  Such is the case at bar.

**II.  Good Cause Exists For This Examination**

Because Plaintiff asserts physical injuries as a result of negligence on the part of the VA, he has placed his physical condition in controversy as a matter of law.  See Schlagenhauf, 379 U.S. at 119.  Furthermore, he has asserted in his complaint, in his responses to interrogatories, and during his deposition

that he is suffering from numerous permanent physical injuries as a result of the VA's purported negligent treatment of him.  These purported injuries constitute a significant portion of Plaintiff's claimed damages.  Defendant must have an opportunity to examine Plaintiff and explore these alleged injuries.  Defendant asserts that this examination is essential to its defense on the issue of damages.  Dr. Ricther is uniquely and exceptionally well-qualified to perform this examination of Plaintiff.  See Exhibit C.  Furthermore, as stated above, Plaintiff testified that he has undergone several rectal examinations since December 7, 2001, without incident and without any worsening of his alleged current condition.  See Shamon Dep. at pp. 104-107.  Thus, Defendant asserts that there is good cause for this examination of Plaintiff by Dr. Ritcher, and, accordingly, the Court should grant this Motion.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant requests that the Court grant this Motion to permit the Defendant to have James M. Richter, M.D., examine Plaintiff in a suitable room at Massachusetts General Hospital in Boston, Massachusetts, at a time most convenient for Plaintiff and Dr. Ritcher.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

Dated: April 8, 2005        By:  /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney
                                        Moakley Federal Courthouse
                                        One Courthouse Way, Suite 9200
                                        Boston, MA  02210
                                        (617) 748-3398

## CERTIFICATION UNDER L.R. 7.1

I certify that in accordance with Local Rule 7.1, on March 4, and 31, 2005, I have conferred with Plaintiff's counsel and have attempted in good faith to resolve the issues addressed in this Motion.

                                        /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney