```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
RONALD SHAMON and PATRICIA SHAMON, )
     Plaintiffs,              )
                              )
v.                            ) Docket No. 04cv11674-WGY
                              )
UNITED STATES OF AMERICA,     )
     Defendant.               )
_____)
```

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, pursuant to Fed. R. Civ. P. 56, submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment. Defendant moves for summary judgment as to Plaintiff Patricia Shamon's loss of consortium claim (Count Two) because she did not marry Plaintiff Ronald Shamon until <u>after</u> discovering his alleged injuries. Accordingly, Mrs. Shamon's loss of consortium claim fails as a matter of Massachusetts law.

### FACTS

Plaintiffs bring negligence and loss of consortium claims against the Government under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, <u>et</u> <u>seq</u>. Complaint ¶1. Specifically, Mr. Shamon claims that on December 7, 2001, a doctor, who was then employed by the Department of Veterans Affairs ("VA"), negligently perforated his rectum with a scope instrument during a sigmoidoscopy examination. <u>Id.</u> at ¶¶9, 27; Deposition of Ronald Shamon ("R. Shamon Dep.") pp. 53-55, attached hereto as Exhibit A. As a result of that perforation,

Mr. Shamon claims that he later developed numerous perirectal abscesses in his colon. Complaint ¶27. Mrs. Shamon, Mr. Shamon's wife, asserts a claim for loss of consortium. Complaint ¶¶29-31.

However, the Plaintiffs were not married on December 7, 2001 - the date of the alleged injury. R. Shamon Dep. p. 8; Deposition of Patricia Shamon ("P. Shamon Dep.") p. 12, attached hereto as Exhibit B; Plaintiff Ronald Shamon's Objections and Responses to Defendant's Interrogatories ("R. Shamon's Interrogatory Responses") No. 14, attached hereto as Exhibit C. Prior to December 7, 2001, Mr. and Mrs. Shamon had been living together, unmarried, since June 15, 1987. P. Shamon Dep. pp. 11-12. Mrs. Shamon testified during her deposition that although she and Mr. Shamon had decided to get married since 1988, they did not set a date until the summer of 2001. Id. at pp. 11, 19. Before moving from Florida to Massachusetts in 1998, Mr. and Mrs. Shamon did not hold themselves out as a married couple. Id. at pp. 7, 12-14. They did not file joint tax returns or jointly own their home. Id. at pp. 12, 15. They did, however, have a joint savings account. Id. at pp. 14-15. Mrs. Shamon testified that when she and Mr. Shamon moved to Massachusetts in 1998, she lied to some of her neighbors, claiming that they were married, because she felt embarrassed to tell them the truth about their marital status. Id. at pp. 12-14. The Plaintiffs, however, told

their family and friends that they were not married. Id. at p. 14.

Mrs. Shamon testified that during the summer of 2001 Mr. Shamon gave her an engagement ring and they set a wedding date for December 10, 2001. Id. at pp. 17, 19. Mrs. Shamon claims that she and Mr. Shamon canceled the wedding sometime between December 7, 2001, and December 10, 2001, because of Mr. Shamon's alleged injury on December 7, 2001. Id. at pp. 21-22. She admitted however that they never obtained a wedding license, or contacted friends, family, a place to have the wedding ceremony, a caterer or a reception hall prior to December 10, 2001, in order to plan a wedding. Id. at pp. 16, 21-23.

Mrs. Shamon testified that since Mr. Shamon's release from a VA Hospital on December 21, 2001, Mr. Shamon began to exhibit traits that he did not have prior to that date. Id. at pp. 36, 39-49, 53-57. Indeed, Mrs. Shamon stated that on December 21, 2001, she immediately noticed physical and emotional changes in Mr. Shamon. Id. at pp. 36, 39-49, 53-57. Mrs. Shamon identified the physical and emotional changes she noticed in Mr. Shamon during her deposition, which included physical weakness, headaches, inability to sleep, emotional distress, irritability, and lack of sexual interest. Id. at pp. 36, 39-49, 53-57. She also testified about the affect Mr. Shamon's physical and emotional changes had on her. Id. at pp. 57-59. Mrs. Shamon

appreciated the affects Mr. Shamon's physical and emotional changes had on her immediately. Id. at pp. 57-59. It was not until April 12, 2002 -- several months after Mr. Shamon's alleged injury on December 7, 2001, and during the medical treatment of his perirectal abscesses -- that the Plaintiffs were married. Id. at p. 12; R. Shamon Dep. p. 8.

**ARGUMENT**

**A.    Summary Judgment Standard**

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir. 1995)(quoting Fed. R. Civ. P. 56). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v. F.W. Morse & Company, Inc., 76 F.3d 413, 428

(1st Cir. 1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993) (citation omitted). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

**B.   Mrs. Shamon's Loss Of Consortium Claim Fails Because She and Mr. Shamon Were Not Married On The Date Of The Alleged Injury.**

Because the underlying tort occurred in Massachusetts, Massachusetts state law applies to this action. See e.g., Mitchell v. Unites States, 141 F.3d 8, 13 (1st Cir. 1998). Indeed, the First Circuit and this Court have followed Massachusetts state law when considering a loss of consortium claim based upon the FTCA. See id.; Armstrong v. Lamy, 938 F. Supp. 1018, 1051 (D. Mass. 1996); Davis v. United States, 834 F. Supp. 517, 518 (D. Mass. 1993); Rosario v. United States, 824 F. Supp. 268, 288-289 (D. Mass. 1993); Wozniak v. Unites States, 701 F. Supp. 259, 262 (D. Mass. 1988).

Under Massachusetts law, either spouse has a claim for loss

of consortium shown to arise from personal injury of the other spouse caused by negligence of a third party. Diaz v. Eli Lilly and Co., 364 Mass. 153, 160 (1973). The Supreme Judicial Court ("SJC"), however, has refused to expand the right to recover for loss of consortium to a person who was not married to her injured companion at the time her companion sustained the alleged injury. See Feliciano v. Rosemar Silver Co., 401 Mass. 141, 142-143 (1987).

In Feliciano v. Rosemar Silver Co., the defendant moved in the trial court for summary judgment as to the plaintiff's, Dolores Feliciano, loss of consortium claim on the grounds that she and her husband, Marcial Feliciano, were not legally married at the time Marcial sustained his injuries. Id., at 141. Plaintiffs opposed the motion on the grounds that they were a "de facto married couple." Id., at 141-142. Plaintiffs argued that for approximately twenty years before their legal marriage Dolores used Marcial's surname, and that they held themselves out as husband and wife, had joint savings accounts, filed joint tax returns, jointly owned their home, depended on each other for companionship, and maintained a sexual relationship to the exclusion of all others. Id., at 142.

The trial court granted the defendant's motion for summary judgment. The SJC affirmed the trial court's decision, stating:

> Marriage is not merely a contract between the
> parties. It is the foundation of the family.

> It is a social institution of the highest importance.  The Commonwealth has a deep interest that its integrity is not jeopardized. . . . Our recognition of a right of recovery for the loss of a spouse's consortium . . . promotes that value.  Conversely, that value would be subverted by our recognition of a right to recover for loss of consortium by a person who has not accepted the correlative responsibilities of marriage.  This we are unwilling to do.
>
> Furthermore, as a matter of policy, it must be recognized that tort liability cannot be extended without limit.  Distinguishing between the marriage relationship and the myriad relationships that may exist between mere cohabitants serves the purpose of limiting protection to interests and values that are reasonably ascertainable. . . . That cohabitants must have a "stable and significant" relationship to qualify for loss of consortium recovery, a standard relied on in the case of Butcher v. Superior Court, 139 Cal. App. 3d 58, 70 (1983), is an unsatisfactorily vague and indefinite standard.
>
> We are not aware that any State court of last resort has recognized a right of recovery for loss of consortium outside of marriage.  The two Federal decisions cited by the plaintiff interpreting State law as allowing such recovery . . . were subsequently repudiated in the relevant States.

Id. at 142-143 (citations and internal quotation marks omitted).  Therefore, generally, a loss of consortium claim cannot lie where the plaintiff was not married to the injured tort victim at the time of injury.[1]  See also Faber v. TGI-Friday's Inc., 148

---

[1] But see Curtis v. R. W. Granger & Sons, Inc., No. 951827, 1996 WL 1353310, at *1-2 (Mass. Super. Ct. Aug. 2, 1996)(denying motion for summary judgment and allowing loss of consortium claim to proceed because facts showed plaintiffs' interest in marriage

F.Supp.2d 556, 558 (E.D. Pa. 2001) (under Pennsylvania state law, "Because it arises from the marital relationship, a claim for loss of consortium does not exist if the complaining parties are not married when the injury occurs"); <u>Geressy v. Digital Equip. Corp.</u>, 980 F. Supp. 640, 652-653 (E.D.N.Y. 1997) (under New York state law, "[a] cause of action will not lie for loss of consortium where the injured tort victim was not married to the plaintiff-spouse at the time of injury"); <u>Nelson v. Fleet Nat'l Bank</u>, 949 F. Supp. 254, 264 (D. Del. 1996) (under Delaware law, one necessary element of loss of consortium claim is that plaintiff was married to injured tort victim at the time of the injury); <u>Schroeder v. Boeing Comm. Airplane Co., Div. of Boeing Corp.</u>, 712 F. Supp. 39, 42 (D. N.J. 1989) ("the rationale for this rule of law has been variously stated: a person should not be permitted to marry a cause of action . . . one takes a spouse in the then existing state of health and thus assumes the risk of any deprivation resulting from prior disability, . . . on social policy grounds, liability at some point must be delimited . . . . We have no hesitance in expressing our agreement with these courts where the issue is the right to claim consortium where the

---

was "reasonably ascertainable" because plaintiffs were engaged eight months before injury date, planned wedding months before injury date, contacted the church, caterer and reception hall months before injury date, sent out invitations with an intended wedding date before injury date, received invitation responses before injury date, and were married on intended wedding date - only 19 days after the injury date).

tortious conduct and fact of injury were both known or knowable prior to marriage") (internal quotation marks omitted) (citing Stager v. Schneider, 494 A.2d 1307, 1315-16 (D.C. App. 1985)); Kelleher v. Boise Cascade Corp., 676 F. Supp. 22, 25 (D. Me. 1988) (under Maine state law, wife cannot recover for loss of consortium because she was not married to plaintiff when he was injured by defendant's allegedly negligent conduct); Rockstroh v. A.H. Robins Co., 602 F. Supp. 1259, 1269 (D. Md. 1985) ("It appears to be universally held that, in order to maintain a valid action for loss of consortium, the parties must be married at the time of the injury").

This Court when applying Feliciano and the Massachusetts "discovery rule" held that, because a loss of consortium claim might not be discoverable (that is, latent) at the time of the injury, a court must determine the date of accrual of the loss of consortium claim. Armstrong, 938 F. Supp. at 1051. Stated another way, a court must determine the date of accrual of the loss of consortium claim because where a spouse is not aware of the injury or its affects on the relationship at the time of marriage, a loss of consortium claim is still available. This reasoning is in line with other district courts. See, e.g., Smith v. Paslode Corp., 799 F. Supp. 960, 964 (E.D. Mo. 1992), aff'd in part and rev'd in part on other grounds, 7 F.3d 116 (8th Cir. 1993).

In the instant case, Plaintiffs were not married on December 7, 2001 -- the date of Mr. Shamon's alleged injury.  <u>See</u> R. Shamon Dep. p. 8; P. Shamon Dep. p. 12; R. Shamon's Interrogatory Responses No. 14.  Moreover, Mrs. Shamon immediately appreciated Mr. Shamon's physical and emotional changes, and the affects these changes had on her, on December 21, 2001, when Mr. Shamon was released from a VA Hospital.  P. Shamon Dep. pp. 36, 39-49, 53-59.  Accordingly, Mrs. Shamon's claim accrued on or about December 21, 2001.  <u>See</u> <u>Armstrong</u>, 938 F. Supp. at 1051.  Mrs. Shamon later married Mr. Shamon on April 12, 2002, fully aware of his alleged health and emotional problems and their affects on her.  <u>See</u> <u>id.</u> at pp. 36, 39-49, 53-59.  Therefore, Mrs. Shamon's loss of consortium claim fails as a matter of law.

## CONCLUSION

Accordingly, for the reasons articulated above, Mrs. Shamon's loss of consortium claim (Count Two) should be dismissed as a matter of law.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

        By:  <u>/s/ Damian W. Wilmot</u>
                DAMIAN W. WILMOT
                Assistant U.S. Attorney
                Moakley Federal Courthouse
                One Courthouse Way, Suite 9200
                Boston, MA 02210
                (617) 748-3100

Dated: April 18, 2005

**CERTIFICATION UNDER L.R. 7.1**

    I certify that in accordance with Local Rule 7.1, on April 13, 2005, I have conferred with Plaintiff's counsel and have attempted in good faith to resolve the issues addressed in this Motion.

                                        /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney