# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SHAMON and <br> PATRICIA SHAMON, <br>        Plaintiffs <br> v. <br> UNITED STATES OF AMERICA, <br>        Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 04-11674-WGY <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPPOSITION OF PLAINTIFF RONALD SHAMON TO MOTION OF DEFENDANT FOR PHYSICAL EXAMINATION PURSUANT TO F.R.C.P. 35(a)

Plaintiff, Ronald Shamon ("Shamon"), respectfully opposes the Defendant, United States of America's ("the Defendant") Motion for Physical Examination Pursuant to F.R.C.P. This motion must be denied because the Defendant has failed to show "good cause" for its proposed examination. First, the Defendant has available to it other, less intrusive means of obtaining the *exact* information it seeks through its proposed physical examination of the Plaintiff. Second, the Defendant has failed to demonstrate that the information it seeks to obtain through the proposed physical examination is necessary to the formulation of its defense, nor have they demonstrated that the proposed physical examination will yield any conclusive results regarding the nature and extent of Mr. Shamon's injuries. Moreover, the risks associated with this proposed invasive examination (digitial exam and flexible sigmoidoscopy) greatly outweigh any purported need for the examination. For these reasons, the Court should deny Plaintiff's motion.

## BACKGROUND

### Relevant Factual Background

This action arises out of injuries sustained by Ronald Shamon as a result of a flexible sigmoidoscopy that was negligently performed on Mr. Shamon at the Veterans' Administration Medical Center in West Roxbury, MA ("West Roxbury VA") on December 7, 2001. As a direct result of this negligent procedure, Mr. Shamon sustained large bi-lateral peri-rectal abcesses. Over the course of the next several months, Mr. Shamon was required to undergo numerous surgical procedures designed to address these abcesses. See Complaint ¶¶ 15 – 21.

Within days following the Mr. Shamon's December 7 flexible sigmoidoscopy, Mr. Shamon began experiencing extreme rectal pain and a high fever. In response to these symptoms, he was admitted to the Brockton VA Hospital where he was diagnosed with bi-lateral perirectal abscesses. Mr. Shamon was transferred immediately to the West Roxbury VA, where Garry Fitzpatrick, M.D. performed emergency surgery (incision and drainage of large bilateral peri-rectal and inschio-rectal abscess) on Mr. Shamon with considerable blood loss. See Complaint ¶¶ 16-17.

Following this surgery, Mr. Shamon experienced a rocky post-operative course requiring prolonged naso-gastric intubation due to ileus as well as a blood transfusion. On December 18, 2001, Mr. Shamon underwent an additional surgery involving an exploration of the perineum and re-packing of the bilateral ischio rectal spaces. Mr. Shamon was subsequently discharged home on December 21, 2001 with a Foley catheter and a leg bag. Complaint ¶ 18.

Thereafter, Mr. Shamon continued to experience discharge and bleeding from his rectum. See Deposition of Ronald Shamon ("Shamon Dep.") at 86-89, attached hereto as Exhibit A. Dr. Fitzpatrick recommended sphincter exercises and, after Mr. Shamon requested a second opinion, referred Mr. Shamon to Robert Cima, M.D. Dr. Cima first treated Mr. Shamon on February 27, 2002, during his clinic hours at the West Roxbury VA. See Shamon Dep. at 90-91. After evaluating Mr. Shamon, Dr. Cima immediately re-admitted him due to persistent drainage from the perineal area and rectum. On the following day, Dr. Cima performed another surgical procedure, involving an additional incision and drainage of bi-lateral peri-rectal abscesses. Mr. Shamon was subsequently discharged from the hospital on March 3, 2002. See Shamon Dep. 92-93.

Following these surgical procedures, Dr. Cima continued to treat Mr. Shamon on a weekly basis. Shamon Dep. 96- 97. On May 16, 2002, Dr. Cima performed yet another surgical procedure on Mr. Shamon for drainage of recurrent perineal abscess and anal fistulotomy. See Medical Record of R. Shamon, RS 00131, attached hereto as Exhibit B.

Between May and September 2002, Mr. Shamon continued to experience mucous draining from his rectum and incontinence. See Shamon Dep. at 100 – 101. During a September 2002 , Dr. Cima informed Mr. Shamon that he had a defective sphincter and would continue to suffer from numerous permanent conditions, including the following:

- After each bowel movement, Mr. Shamon would need to either use a Fleet Enema or cotton balls

- Mr. Shamon would need to drink one to three glasses of water and Citrucel to minimize mucous discharge from his rectum

3

- Due to the tremendous scar tissue resulting from Mr. Shamon's several surgeries, Mr. Shamon would feel discomfort and Dr. Cima recommended sitting on a donut and standing often

See Shamon deposition at 102-103.

Dr. Cima further informed Mr. Shamon that there was no way to rectify either the defective sphincter or the scar tissue, and that Mr. Shamon would "live with it the rest of [his] life." Shamon Dep at 103:23 – 25; 111 –112.

## Procedural History

Fact discovery commenced in this case in January 2005, and is set to close on May 2, 2005. During this time, Plaintiffs took the depositions of Drs. Chi Zhang and Macros Pedrosa, who participated in the flexible sigmoidoscopy performed on Mr. Shamon on December 7, 2001, and the deposition of Garry Fitzpatrick, M.D., or in Mr. Shamon's subsequent treatment. The Defendant noticed and took two depositions: Mr. Shamon and his wife, Plaintiff Patricia Shamon. Defendant has noticed no other depositions.

## Requested Medical Exam

Defendant requests a physical examination for two stated reasons: to formulate opinions respecting (1) the "*existence* of the injuries identified by Plaintiff," and (2) "the *extent* of those injuries, that is, whether these injuries are permanent in nature." See Defendant's Memorandum of Law in Support of Motion for Examination, at 5 – 6 (emphasis added). The Defendant proposes an exam consisting of the following: (1) external examination of the anus, (2) digital examination, and (3) examination of the colon via a flexible scope. Id. at 6.

4

## ARGUMENT

### A. Defendant Has Not Met Its Burden of Establishing "Good Cause" Necessary to Allow a Physical Examination of Mr. Shamon.

Federal Rule of Civil Procedure 35(a) allows a party to order another to submit to a physical examination only when the physical condition of such party is "in controversy," and only upon order "for good cause shown."  See Fed.R.Civ.P. 35(a).  The moving party's burden to establish "good cause" is a high one; indeed the requirement of good cause "is not a mere formality."  Schlgenhauf v. Holder, 379 U.S. 104, 118 (1964).  Thus, the standard is "not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but requires an *affirmative showing* by the movant that each condition as to which the examination is sought is really and genuinely in controversy *and that good cause exists for ordering each particular examination.*"  Id. (emphasis added).

Thus, the moving party generally must first exhaust <u>all</u> other means available to obtain the information sought before an exam will be allowed.  Schlgenhauf, 379 U.S. at 118 ("The ability of the movant to obtain the desired information by other means is also relevant.").  Indeed, it is the Defendant's burden to establish that the information it seeks through the medical examination cannot be obtained through other discovery techniques.  See Matey v. Marroni, 82 F.R.D. 371, 372 (E.D. Pa. 1979).  See also, e.g., Storms v. Lowe's Home Centers, Inc., 211 F.R.D. 296, 298 (W.D. Va. 2002) (denying motion for Rule 35 medical examination, in part, where defendant did not show good cause, where plaintiff provided all medical records and report from vocational expert and where defendant will depose plaintiff, "at which time counsel will be able to examine the plaintiff on all matters relating to his functional capacity").

5

Here, the Defendant has numerous other means available by which it can obtain the desired information. Notably, the Defendant has not taken (or even noticed) the deposition of Dr. Cima, the surgeon who treated Mr. Shamon between February and September 2002. Dr. Cima was the final VA physician to examine and treat Mr. Shamon. As set forth above, Dr. Cima informed Mr. Shamon that his physical injuries, including his scar tissue and defective sphincter, are permanent. Presumably Dr. Cima is competent to testify as to the <u>both</u> the existence <u>and</u> the extent of Mr. Shamon's injuries -- the two reasons for which Defendant requests a physical examination of Mr. Shamon. At a minimum, the Defendant should be required to depose Dr. Cima prior to subjecting Mr. Shamon to an invasive physical examination.

In short, the Defendant has not met its burden of showing that the information sought cannot be obtained by other discovery means. As such, the "discriminatory application of Rule 35" applies, and the Court should deny Defendant's motion for an examination. <u>Matey</u>, 82 F.R.D. at 372.

### B. The Defendant Makes No Showing that the Proposed Physical Examination of Mr. Shamon Will Yield Conclusive Results or is Otherwise Necessary to Formulate Opinions Regarding Mr. Shamon's Injuries.

The Defendant has also failed to demonstrate that the results of the requested examination are necessary for the Defendant's expert witness, James M. Richter, M.D., to formulate opinions regarding the extent of Mr. Shamon's injuries. <u>See, e.g.</u>, <u>Waite v. Noble Drilling Corp.</u>, 34 Fed. R. Serv. 3d 318 (E.D. La. 1996) (denying motion for medical examination, in part, because there was no indication from the doctor that the *absence* of the

requested exam impeded his ability to challenge the plaintiff's medical conclusions). Compare Anson v. Fickel, 110 F.R.D. 184, 186 (N.D. Ind. 1986) (allowing Rule 35(a) mental examination where defendant and its expert represented to court that they *first* reviewed relevant medical records *and* "formed preliminary opinions concerning the plaintiff's mental condition which are adverse to the claims of the plaintiff"). Indeed, a physical examination should be denied where the moving party is provided with sufficient information and material from which it can draw conclusions. See, e.g., Stanislowski v. Upper River Serv., Inc., 134 F.R.D. 206 (D. Minn. 1991) (medical exam pursuant to Rule 35(a) not allowed where the defendant "was provided with all the plaintiff's medical records, has deposed the plaintiff, and has been provided with information concerning plaintiff's … medical disability.").

In the present case, the Defendant makes no showing whatsoever that the proposed physical examination of Mr. Shamon will contribute in any meaningful fashion to its expert's formulation of opinions regarding the nature and extent of Mr. Shamon's injuries. That Mr. Shamon alleges his injuries are permanent does not automatically entitle the Defendant to a physical examination of Mr. Shamon. Defendant and its experts have available Mr. Shamon's full medical records and Defendant has deposed Mr. Shamon. Further, Defendant will have the opportunity to review Plaintiff's expert disclosures and to depose Plaintiff's treating physicians and expert witnesses.

Moreover, it is unlikely that the physical examination of Mr. Shamon proposed by the Defendants will yield any conclusive results. First, it is not likely that the perforation caused during the December 7, 2001 procedure still exists given that almost four years have elapsed

7

since the sigmoidoscopy procedure at issue in this case. In addition, most of Mr. Shamon's long-term problems are lifestyle related, and do not lend themselves to objective verification through a physical examination. See Hernandez v. Gulf Oil Corp., 21 Fed. R. Serv. 1378, 1379 (E.D. Pa. 1976) (denying motion for bone scan where the procedure will be dispositive of plaintiff's claim *only if* "the scan shows significant abnormality; negative results will serve only to eliminate *one potential cause of pain*") (emphasis added).

### C. The Risks and Invasiveness Associated with the Proposed Examination Outweigh Any Purported Need for the Examination.

Even where the Court determines that good cause exists for a physical examination, the Court has wide discretion to determine whether to allow the medical examination. See 7 Moore's Federal Practice, § 35.05[1]. Indeed, the moving party has no "absolute right to an examination" and the Court may "weigh the need for a procedure against the pain and safety risks associated with it." Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D. Pa. 1990). See also Hernandez v. Gulf Oil Corp., 21 Fed. R. Serv. 1378, 1379 (Rule 35(a) physical examination "may be ordered if the need for the facts and the interest of justice outweigh the court's concern over the safety and freedom from pain of the party to be examined").

Thus, for example, in Waite v. Noble Drilling Corp., 34 Fed. R. Serv. 3d 318 (E.D. La. 1996), the Court denied a request for a medical examination in a personal injury action in which the plaintiff alleged injuries resulting when he was struck in the groin area. The defendant requested that the plaintiff undergo an arteriogram, which the defendant argued would provide it with necessary information regarding the cause of plaintiff's erectile dysfunction. The Court denied the request after determining that the defendant's experts did not show a need for the

8

results of such an examination in order to formulate their conclusions.  Id.  Moreover, the court evaluated the risks of the procedure, which involved invasive techniques and medical risks, including arterial injury, bleeding and more remote consequences of stroke or paralysis.  Thus, based on a balancing of the need for such exam with its risk and invasiveness, the court denied the motion and concluded, "defendant appears fully capable of presenting its defense on the causation issue without recourse to the invasive, risky and medically unnecessary procedure it seeks to compel."  Id.

     The same is true here.  The proposed examination of Mr. Shamon, which Defendant proposes will include a digital exam and a flexible sigmoidoscopy, the very procedure that caused Mr. Shamon's present injuries. This procedure is highly invasive and poses significant potential risks to Mr. Shamon (e.g. infection, bowel perforation etc.) (See VA Consent Documents attached hereto as Exhibit C).  Contrary to the representations contained in Defendant's motion, Mr. Shamon has not "undergone several rectum examinations since December 7, 2001, without incident and without any worsening of his alleged condition."  See Defendant's Memorandum at 6.  After the flexible sigmoidoscopy on December 7, 2001, Mr. Shamon continued for several months (through May 2002) to suffer extreme pain and discomfort in his rectal area and continued to bleed and have discharge from his rectum.  As a result, Mr. Shamon underwent several rectal surgeries which contributed to permanent, and painful, scarring and a defective sphincter.  Since leaving the care of the VA in Fall 2002, Mr. Shamon has undergone only three digital examinations, each as part of an annual physical examination.  See Shamon Dep. at 104 – 106.  Nevertheless, Mr. Shamon was "fearful" of the digital exams and

9

they were "uncomfortable" to him.  <u>See</u> Shamon Dep. at 107.  Mr. Shamon has not undergone a flexible sigmoidoscopy since December 7, 2001.

Case 1:04-cv-11674-WGY    Document 15    Filed 04/22/2005    Page 10 of 12

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for a Rule 35(a) physical examination.

        Respectfully submitted,

        RONALD SHAMON,

        By his attorneys,

        /s/ Michael R. Perry
        Michael R. Perry (BBO #555300)
        Halye A. Sugarman (BBO #646773)
        HANIFY & KING
        Professional Corporation
        One Beacon Street
        Boston, MA  02108
        (617) 423-0400

DATED:  April 22, 2005
428266

## **CERTIFICATE OF SERVICE**

I, Michael R. Perry, certify that on this 22nd day of April 2005, I served a copy of the forgoing Opposition to Motion for Physical Examination on counsel for the Defendant,

        Damian W. Wilmot
        Assistant U.S. Attorney
        U.S. Attorney's Office
        Department of Justice
        John Joseph Moakley Federal Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA 02210

                <u>s/s Michael R. Perry</u>
                Michael R. Perry