UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SHAMON and<br>PATRICIA SHAMON,<br><br>　　　　Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 04-11674-WGY<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION OF PLAINTIFFS RONALD AND PATRICIA SHAMON TO
MOTION OF DEFENDANT UNITED STATES OF AMERICA
<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

　　Plaintiffs, Ronald and Patricia Shamon, respectfully oppose the Defendant's Motion for Partial Summary Judgment. In its motion, the Defendant seeks dismissal of Plaintiff, Patricia Shamon's loss of consortium claim (Count II). As set forth in detail below, Mrs. Shamon's consortium claim arises out of injuries sustained by Mr. Shamon as a direct result of a flexible sigmoidoscopy procedure that was negligently performed upon Mr. Shamon at the West Roxbury Veterans' Administration Hospital on December 7, 2001. Mr. and Mrs. Shamon had intended to marry on December 10, 2001, and had planned a wedding for that date – just three days after the injury. But the Shamons were forced to postpone their wedding for four months while Mr. Shamon underwent numerous surgeries and procedures. The Shamons postponed their wedding <u>only</u> for that reason. Therefore, as demonstrated below, the Shamons' interest in marriage was reasonably ascertainable at the time Mr. Shamon sustained his injuries, and for that

reason, Mrs. Shamon should be permitted to pursue her claim for loss of consortium at trial.

## RELEVANT FACTS

Mrs. Shamon and Mr. Shamon met and began dating in 1987 when they both lived in Ft. Lauderdale, Florida. See Exhibit A, Deposition of Patricia Shamon ("P. Shamon Dep.") at 10:23 – 11:3. At that time, Mrs. Shamon was fifty-six years old and had been married twice before. Id. at 8:5 – 9:8. Mr. Shamon was fifty-one years old and had one previous marriage. See Exhibit B, Deposition of Ronald Shamon ("R. Shamon Dep.") at 8:19 – 9:8; 9:19 – 20. The couple lived together in Ft. Lauderdale, but did not hold themselves out as being married. P. Shamon Dep. at 11:25 – 14; 18 – 21.

After retiring, in October 1998, Mrs. Shamon and Mr. Shamon moved to Plymouth, Massachusetts. P. Shamon Dep. at 14:14 – 16. At that time, the Shamons began to plan their wedding. P. Shamon Dep. at 16:4 – 11. In June 2001, in celebration of Mrs. Shamon's birthday, Mr. Shamon gave Mrs. Shamon an engagement ring. P. Shamon Dep. at 19:7 – 10. The Shamons set a wedding date of December 10, 2001, and immediately informed their children and grandchildren, as well as friends and relatives in Tennessee and Florida. P. Shamon Dep. at 18:10 – 19:24. As this was Mr. and Mrs. Shamons' second and third weddings, respectively, the couple did not plan an elaborate affair and reception. P. Shamon Dep. at 23:4- 12. Rather, the couple intended a short, simple ceremony at Plymouth Town Hall with close family, to be followed by a dinner out with Mr. Shamon's daughter and son-in-law, Laura and Andy Polin, and their three children, who live nearby in Norwood, Massachusetts, and Mr. Shamon's two brothers

2

who were living at the time. P. Shamon Dep. at 22:16 – 22, 22:25 – 23:12. The Shamons did not intend for their out-of-state family and friends to attend the ceremony. P. Shamon Dep. at 20:15 – 18.

On December 7, 2001, Mr. Shamon underwent a flexible sigmoidoscopy procedure at the Veterans' Administration Hospital in West Roxbury, Massachusetts ("West Roxbury VA"). See Complaint ¶¶ 8-9. As the flexible scope was inserted, Mr. Shamon began to experience extreme pain, and during the course of the procedure, the sigmoidoscopy tube was inserted several times. See Complaint ¶¶ 9-10. Thereafter, Mr. Shamon was released home and told that everything was fine. See Complaint ¶ 10.

After the flexible sigmoidoscopy, over the course of the following couple of days, Mr. Shamon began to experience extreme pain in his rectal area and developed a fever and chills. As a result, the Shamons decided to postpone and reschedule their wedding. Indeed, in light of Mr. Shamon's worsening condition, "the wedding was just not an issue at that point." Exhibit A, P. Shamon Dep. at 22:1 – 6.

When Mr. Shamon's condition had not improved (and indeed, had worsened), on December 11, 2001, Mrs. Shamon took Mr. Shamon to be treated at the Veterans' Administration Medical Center in Brockton, Massachusetts ("Brockton VA"), where Mr. Shamon was treated with pain medication and sent home. P. Shamon Dep. at 27:10 – 28:16; 30:11: - 18. That night, Mr. Shamon continued to have a fever and experience chills and extreme rectal pain. The following morning, on December 12, 2001, the Shamons returned to the Brockton VA for treatment, whereupon Mr. Shamon was admitted and immediately transferred to the West Roxbury VA for emergency surgery.

P. Shamon Dep. at 31:7 – 33:22.  Mr. Shamon was released home on December 21, 2001, but continued to experience symptoms and pain.  Id. at 35:1 – 36: 18.

Over the course of the next few months, Mr. Shamon underwent several additional surgeries and procedures at the VA in attempts to alleviate his rectal pain and other complications that developed.  See Complaint ¶¶ 15 – 21.  In December 2001, Mr. Shamon underwent an additional surgery involving an exploration of the perineum and re-packing of the bilateral ischio rectal spaces.  Mr. Shamon was subsequently discharged home on December 21, 2001 with a Foley catheter and a leg bag.  See Exhibit B, R. Shamon Dep. at 74:2 – 11.  Mr. Shamon continued to experience pain, and in February 2002, Mr. Shamon was hospitalized again due to persistent drainage from the perineal area and rectum.  Mr. Shamon underwent an incision and drainage of bi-lateral peri-rectal abscesses and was subsequently discharged from the hospital on March 3, 2002.  R. Shamon Dep. 92 – 94:6.

While Mr. Shamon continued to be treated by the VA, on April 12, 2002, the Shamons married at Plymouth Town Hall.  See Exhibit A., P. Shamon Dep. at 12:16 – 17.  Thereafter, Mr. Shamon continued to receive treatment from the VA.  As late as May 2002, Mr. Shamon had yet another procedure for drainage of recurrent perineal abscess and anal fistulotomy. Between May and September 2002, Mr. Shamon continued to experience mucous draining from his rectum and incontinence.  See R. Shamon Dep. at 100 – 101.

4

## ARGUMENT

I.   **Summary Judgment Standard.**

In seeking summary judgment, the Defendant's heavy burden is to demonstrate, based on the entire factual record, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, "the test remains a fairly rigorous one." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1st Cir. 1987). In assessing whether summary judgment is appropriate, "the Court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences and resolve all doubts regarding factual issues in favor of the party opposing summary judgment." Amgen Inc. v. Hoechst Marion Roussel Inc., 126 F.Supp.2d 69, 93 (D. Mass. 2001) (emphasis added). "If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmovant." Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 684 (1st Cir. 1994). Thus, on summary judgment, "the nonmoving party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him. . . .'" Greenburg, 835 F.2d at 936 (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). The Defendant cannot meet this demanding standard.

5

II.  **Summary Judgment Must be Denied Because Material Issues of Fact Exist as to Whether the Shamons' "Interest in Marriage is Reasonably Ascertainable."**

The Defendant cites <u>Feliciano v. Rosemar Silver Company</u>, 401 Mass. 141 (1987) as Massachusetts authority for the proposition a spouse cannot maintain a loss of consortium claim where the couple was not married on the date of the alleged injury under any circumstance. This argument stretches the holding in <u>Feliciano,</u> and ignores at least one Massachusetts decision allowing a spouse's loss of consortium claim where the plaintiff was not married on the date of the alleged injury.

In <u>Feliciano</u>, the plaintiffs held themselves out as married and, for all intents and purposes, acted as married couple for over twenty years, having joint savings accounts and filing joint tax returns. Mr. Feliciano suffered an injury in 1981. The couple then married two years later. <u>Id.</u> The Court denied Mrs. Feliciano's claim for loss of consortium on the grounds they were not married in 1981, when Mr. Feliciano allegedly was injured. <u>Id.</u>

Where, however, a couple *intends* to marry, *plans* a wedding, and then marries *shortly after* an injury, at least one Massachusetts court has allowed the spouse to recover on a loss of consortium claim *for the period after the couple became married*. In <u>Curtis v. R.W. Granger & Sons, Inc.</u>, the Court (Quinlan, J.) denied summary judgment to a defendant seeking dismissal of a wife's loss of consortium claim *even though the husband's injury arose prior to their wedding date*. See <u>Curtis v. R.W. Granger & Sons, Inc.</u>, 1996 WL 1353310 (Aug. 2, 1996) (copy attached hereto as Exhibit C).

6

In Curtis, the plaintiffs became engaged in December 2001, when Jeffrey, the husband-to-be gave, Debbie an engagement ring. The couple planned a wedding for September 2002. They contacted a church and a facility to hold a reception, booked a caterer and mailed wedding invitations, which were responded to by guests prior the husband's injury. Id.

Then, less than a month before the scheduled wedding, on August 31, 2002, Jeffrey was injured when he fell from scaffolding at a construction site. Jeffrey sued to recover for his injuries and Debbie, now his wife, brought a loss of consortium claim. The defendants moved for summary judgment, citing Feliciano, for the proposition that plaintiffs must establish that they were husband and wife on the date of the injury in order to recover for loss of consortium.

The Superior Court disagreed and denied summary judgment. Citing Feliciano, the Court explained that the right to recover for a spouse's loss of consortium set forth in Feliciano is one that "promotes the value of marriage and the Commonwealth's 'deep interest that its integrity is not jeopardized.'" Curtis, 1996 WL 1353310 at *2 (quoting Feliciano, 401 Mass. at 142). Thus, recognizing that "tort liability cannot be extended without limit, the Court in Feliciano limited the protection afforded by loss of consortium recover to 'interests and values that are reasonably ascertainable.'" Id. (emphasis added).

The Curtis Court then pointed to several facts in the record to show that the couple's "interest in marriage is reasonably ascertainable," including the substantial facts surrounding their wedding plans which took place months prior to the injury. Curtis

7

distinguished <u>Feliciano</u>, where the couple did not marry *until two years after the alleged injury*. Indeed, notably, there is no indication in <u>Feliciano</u> as to when the couple began their wedding, how long they had planned to be married, or any other circumstance of their marriage.

Thus, the key factor in determining whether Mrs. Shamon has a claim for loss of consortium claim is whether the Shamons' "interests and values in marriage are reasonably ascertainable." <u>See</u> <u>Feliciano</u>, 401 Mass. at 142. It is clear from the record that they are: Mr. and Mrs. Shamon began planning a wedding in 1998 when they moved to Massachusetts. Mr. Shamon gave Mrs. Shamon an engagement ring in June 2001. The couple set a wedding date for December 10, 2001, and immediately notified friends and family. They also planned a dinner out with their children and grandchildren following a ceremony at Plymouth Town Hall. Unfortunately, the Shamons were forced to postpone their wedding when Mr. Shamon became extremely ill following his flexible sigmoidoscopy on December 7 (three days before their planned wedding), and required emergency surgery on December 12, followed by several months of additional procedures and surgeries. The Shamons married on April 12, 2001, even as Mr. Shamon continued to suffer rectal pain and undergo treatment at the VA.

Thus, just like the couple in <u>Curtis</u>, the Shamons demonstrate "substantial facts" to show that the Shamons interest in marriage was reasonable ascertainable at the time Mr. Shamon was injured. Indeed, the Shamons had planned a wedding to take place just *three days* after Mr. Shamon's negligent flexible sigmoidoscopy at the VA. The Shamons postponed their wedding *only* because of Mr. Shamon's extreme illness and

emergency surgeries. Moreover, the Shamons married in April 2002, after Mr. Shamon's several hospital stays, and while he continued to suffer rectal pain and undergo treatment by the VA. For these reasons, material issues of fact exist as to whether Mrs. Shamon states a claim for loss of consortium, and she should be permitted to seek recovery at trial at least for the period of time after which she and Mr. Shamon were married.

## Conclusion

For the foregoing reasons, because material issues of fact exist as to whether the Shamons' interest in marriage is reasonably ascertainable, Plaintiffs respectfully request that the Court deny Defendant's Motion for Partial Summary Judgment as to Mrs. Shamon's claim for loss of consortium (Count II).

        Respectfully submitted,

        RONALD SHAMON and
        PATRICIAL SHAMON,

        By their attorneys,

        /s/ Halye A. Sugarman
        _____
        Michael R. Perry (BBO #555300)
        Halye A. Sugarman (BBO #646773)
        HANIFY & KING
        Professional Corporation
        One Beacon Street
        Boston, MA  02108
        (617) 423-0400

DATED: May 2, 2005
428552

## CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on this 2nd day of May 2005, I served by first class mail, postage prepaid, a copy of the forgoing Opposition to Motion for Partial Summary Judgment on counsel for the Defendant,

>Damian W. Wilmot
>Assistant U.S. Attorney
>U.S. Attorney's Office
>Department of Justice
>John Joseph Moakley Federal Courthouse
>One Courthouse Way, Suite 9200
>Boston, MA 02210

>/s/ Halye A. Sugarman
>_____
>Halye A. Sugarman