UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SHAMON and PATRICIA SHAMON, <br><br> Plaintiffs <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) Civil Action No. 04-11674-WGY ) ) ) ) ) ) |

**PLAINTIFF RONALD SHAMON'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff, Ronald Shamon, respectfully submits this Memorandum in support of his Motion to Amend his original Complaint.

The plaintiff seeks leave to amend his Complaint to add a claim alleging that the Defendant, through its agents and employees, failed to obtain the appropriate informed consent from the Plaintiff prior to performing a flexible sigmoidoscopy procedure upon the Plaintiff on December 7, 2001. As set forth in detail below, the Court should allow Plaintiff's Motion to Amend because: (1) the Plaintiff has exhausted his administrative remedies with respect to his proposed informed consent claim; and (2) the Defendant will suffer absolutely no prejudice whatsoever if the Court allows Plaintiff's Motion.

**BACKGROUND**

In this action, the Plaintiff seeks recovery for permanent injuries resulting from injuries that he sustained as a result of a flexible sigmoidoscopy procedure that was

negligently performed upon him at the West Roxbury Veteran's Administration Medical Center ("West Roxbury VA") on December 7, 2001.

As a direct result the Defendant's negligence, the Plaintiff was required to undergo multiple surgical procedures, leaving him with severe and permanent injuries. See Complaint ¶¶ 11-21.

On December 4, 2003, Mr. Shamon filed a claim with the Veterans Administration Agency alleging that the VA's negligent conduct caused him permanent injuries.[1] See Exhibit A hereto. On or about June 30, 2004, the Defendant denied Mr. Shamon's claim. On July 28, 2004, Mr. Shamon and his wife commenced the instant action alleging negligence on the part of various agents and employees of the Defendant.

During the course of discovery, the parties engaged in extensive discovery regarding the issue of informed consent. For example, during the course of Plaintiff's deposition, defense counsel showed Mr. Shamon a copy of an information sheet published by the American Society for Gastrointestinal Endoscopy, which contained a description of the flexible sigmoidoscopy. See Exhibit B, Deposition of R. Shamon ("Shamon Dep."), at Ex. 1. The information sheet states, in relevant part:

> What are the possible complications of flexible sigmoidoscopy?
>
> Flexible sigmoidoscopy and biopsy are generally safe when performed by physicians who have been specifically trained and are experienced in those endoscopic procedures. **Possible complications include a perforation (tear through the bowel wall) and bleeding from the site of a biopsy.**
>
> Although complications after flexible sigmoidoscopy are rare, it is important for you to recognize early signs of possible complication. Contact your physicians if you notice any of the following symptoms: severe abdominal pain, fevers and chills, or rectal bleeding of more than

---

[1] On or about May 17, 2004, Mr. Shamon amended his administrative claim to include a claim for loss of consortium on behalf of his wife, Patricia Shamon.

one-half cup. It is important to note that rectal bleeding can occur even days after a biopsy.

See Shamon Dep., Ex. 1 (emphasis added). After reviewing this information sheet, Mr. Shamon testified that he had "never seen this document before." Shamon Dep. at 31:6 – 20. He further testified that he no memory of the Defendant ever sending him any documentation identifying the potential risks and complications associated with a flexible sigmoidoscopy procedure. Shamon Dep. at 31:13 – 32:6.

During the course of his deposition, defense counsel also showed Mr. Shamon a copy of an unsigned consent form entitled "Request for Administration of Anesthesia and for Performance of Operations and Other Procedures: Flexible Sigmoidoscopy With Possible Biopsy and/or Polypectomy." See Shamon Deposition, Ex. 2. The consent form states, in relevant part,

> **The nature and purpose of the operation or procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me.** I acknowledge that no guarantees have been made to me concerning the results of the operation or procedure. I understand the nature of the operation or procedure to be the insertion of a flexible tube with a light into the rectum, then advancing it to examine a portion of the colon (large intestine). Biopsies (small pieces of tissue) may be taken for microscopic examination. **Potential complications include perforation (a hole in the colon), bleeding requiring transfusion, infection, drug reaction, the need for surgery, or death.**

See Shamon Ex. 2 (emphasis added).

When confronted with this document, Mr. Shamon testified that he did not sign this or any other any consent form prior to the December 7, 2001 flexible sigmoidoscopy procedure. He further testified that he was *never* apprised by anyone affiliated with the Defendant of the potential risks associated with the flexible sigmoidoscopy procedure at issue in this case. Specifically, Mr. Shamon testified:

3

> Q:   Do you recognize this document [Exhibit 2]?
>
> A:   No.
>
> Q:   Before you is a consent form. Obviously there are no signatures on this form. But is it your testimony that you've never seen this form before?
>
> A:   I would have recognized this – was that supposed to be on all the forms, this top writing here? I don't know what –
>
> Q:   I'm just asking you a question.
>
> A:   No. I never saw that. I'm really going to see that.
>
> **Q:   Just so we're clear, the day that you arrived at the hospital, October [sic] 7th, 2001, no one at the hospital obtained your consent, your written consent to perform the sigmoidoscopy procedure?**
>
> A:   I don't remember signing anything. No one talked to me about this material.
>
> Q:   And is also your testimony that on December 7th, 2001, no one discussed what occurs during a sigmoidoscopy procedure?
>
> A:   No one discussed that at all.
>
> Q:   And is it also your testimony that on December 7th, 2001, that no one explained to you what the potential complications are with a sigmoidoscopy procedure?
>
> A:   No. No.
>
> Q:   "No," that's not your testimony, or no one –
>
> **A:   No one ever mentioned what the complications would be. No.**

See Shamon Dep. at 43:22 – 45:5.

In addition, Mr. Shamon testified that he would not have undergone the flexible sigmoidoscopy had he been informed that a rectal perforation was a potential complication of the procedure:

4

Q: Okay. If you knew that rectal perforation was a potential risk with a sigmoidoscopy procedure, would you have refused to have the procedure done?

A: If I knew, by looking at that, what I felt about the procedure – I didn't want to have it done to begin with. But if I started to have – somebody go through this like here, then I think I would have walked home – walked out of there.

…

Q: Just so I'm clear. **So is it your testimony that if Dr. Zhang, or whatever other doctor at the VA, told you that a potential risk was perforation of the colon?**

A: If I hadn't been – may I answer this way? If I hadn't been forewarned from several people not to have it done at the VA, I probably would [be] okay and have it done. But the more deep I got into it, the more I was ready to jump off and not do it. **But if I saw this [the consent form] at that particular time, that would have made my decision to leave that place.**

Q: Okay. So you are telling me – I'm just trying to be clear again. So you are telling me that if you learned, I guess, that day, on December 7th, that a potential risk of this procedure was perforation of the colon, you would have left. You would have refused the procedure?

A: **Mr. Wilmot, if I read this paragraph, I would have run out of there.**

Q: Okay. Even if you didn't read this. If someone told you – if you learned at all that perforation of the colon was a potential risk –

A: I would have been out of there.

Q: Let me finish the question.

A: Yes.

Q: **So your testimony is, if you learned at some point, that perforation of the colon as a potential risk, you would have refused the procedure?**

A: **I think so, yes.**

See Shamon Dep. at 43:18 – 47:18. (emphasis added).

Moreover, during the course of discovery in this matter, plaintiff's counsel took the depositions of Dr. Zhang, Dr. Pedrosa, and Dolores Kirby, R.N., the three health care providers involved in the sigmoidoscopy procedure at issue in this case. Drs. Zhang and Pedrosa both testified that they understand perforation of the colon (of which they consider the rectum to be a part) to be a known risk and complication of a flexible sigmoidoscopy. See Exhibit C hereto, Deposition of Chi Zhang, M.D. ("Zhang Dep.") at 43:14 – 51:9; Exhibit D hereto, Deposition of Manuel Pedrosa ("Pedrosa Dep.") at 51:7 – 52:7.

Despite this fact, neither Dr. Zhang nor Dr. Pedrosa had any recollection of discussing the potential risks of the procedure with Mr. Shamon prior to the December 7, 2001 sigmoidoscopy procedure. See Pedrosa Dep., at 33:13 – 34:2; Zhang Dep. at 40:11 – 15.; 45:8 – 12. Similarly, Nurse Kirby had absolutely no recollection of obtaining the Plaintiff's informed consent prior to the procedure. See Exhibit E hereto, Deposition of Dolores Kirby, at 20:18 – 21:2. Moreover, the Defendant has failed to produce *any* documentation reflecting the fact that the Plaintiff received the appropriate informed consent prior to the procedure. Indeed, the Defendant has been unable to locate the consent form that Mr. Shamon allegedly signed prior to the December 7, 2001 sigmoidoscopy procedure.

## ARGUMENT

I. **THE COURT SHOULD GRANT SHAMON LEAVE TO AMEND HIS COMPLAINT.**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely granted when justice so requires." See Fed. R. Civ. P. 15(a). As the U.S. Supreme Court has stated,

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely granted.'"

See Forman v. Davis, 83 S. Ct. 227 (1962).

Here, there is no such "declared reason" to deny Mr. Shamon leave to amend his Complaint to add a claim for lack of informed consent. As demonstrated below, Mr. Shamon has satisfied all jurisdictional prerequisites because Mr. Shamon's claim arises from the same events and transactions as set forth in his administrative claim. Moreover, the Defendant will suffer no undue prejudice as a result of the amendment as the parties have already taken fact discovery concerning the consent claim.

    **A. The Court has Jurisdiction over Mr. Shamon's Lack of Informed Consent Claim.**

There is no jurisdictional bar to Mr. Shamon's claim for lack of informed consent. 28 U.S.C. § 2675(a) requires that a plaintiff, as a jurisdictional prerequisite to filing a lawsuit under the Torts Claims Act, first "present" his or her "claim" to the appropriate federal agency. See 28 U.S.C. § 2675(a). Congress "instituted the presentation requirement to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against

7

the United States." See Frantz v. United States, 29 F.3d 222, 224 (5th Cir. 1994) (citing S.Rep. No. 1327, 89th Cong., 2d Sess. 6 (1966), reprinted in U.S.C.C.A.N. 2515)). The purpose of presentment was not "to make recovery from the Government technically more difficult." Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (6th Cir. 1974)), cited in Dillon v. United States, 480 F. Supp. 862, 863 (D.S.D. 1979).

Pursuant to federal regulations, a claim "shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, a Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of … personal injury…" See 28 C.F.R. § 14.2. See also Department of Veterans' Affairs Regulations, 14 C.F.R. ¶ 14.604(a) (same). The regulations do "not say that every detail of the incident must be supplied, only that the agency be notified that an accident has occurred." Dillon v. United States, 480 F. Supp. 862, 863 (D.S.D. 1979). See also Frantz (court does not "require[] plaintiffs to specifically enumerate legal theories of recovery in their administrative claims"); Mellor v. United States, 484 F. Supp. 641 (D. Utah 1978) (all that is required to put a defendant agency on notice of claim is notice of "facts and circumstances" of the claim and a claim for a "sum certain"). Simply put, a claimant is not required to identify in detail each and every potential legal theory of recovery in his administrative claim. Mellor, 484 F. supp. at 642. To do so "would result in an unjustified elevation of form over substance [and] convert a remedial act into a 'trap for the unwary." See Frantz, 480 F. Supp. at 864 (citing Sky Harbor Air Serv. v. United States, 348 F. Supp. 594 (D. Neb. 1972)).

8

Here, Mr. Shamon filed an administrative claim with the Defendant agency on December 3, 2004. Mr. Shamon claimed that he "suffered a great deal of pain, medical procedures, and damages" as a result of a negligently performed flexible sigmoidoscopy during which a Defendant doctor perforated his rectum. See Exhibit A. As a result of the perforation, Mr. Shamon was forced to undergo numerous subsequent treatments and surgeries by the Defendant (some of which were also performed negligently). Id.

Mr. Shamon's lack of informed consent claim arises out of and is premised upon these *exact* factual circumstances identified in both his administrative claim and his original complaint. Mr. Shamon was never informed about the potential risks and complications associated with the flexible sigmoidoscopy procedure. In particular, he was never informed that perforation of the colon (or rectum) was a known risk of the procedure—the exact risk which materialized. Indeed, as a consequence of the Defendant's negligent medical care, Mr. Shamon experienced a perforated rectum during the flexible sigmoidoscopy and was required to undergo several subsequent operations. These facts are all set forth in Mr. Shamon's administrative claim. See Exhibit A. Under these circumstances, the government's investigation of Mr. Shamon's claim "should have revealed the possibility of an informed consent claim [because] [b]y its very nature, the informed consent claim is included in [Shamon's] allegation of negligence in [his] administrative complaint." Frantz, 29 F.3d at 224. See also, e.g., Dillon v. United States, 480 F. Supp. 862 (D.S.D. 1979) (government's investigation of similar medical negligence cases shows defendant is accustomed to investigations of medical negligence allegations and therefore should be expected to investigate for a lack of informed consent claim in such a case); Mellor, 484 F. Supp. at 642 (plaintiff's administrative claim which

9

alleged "negligent care and treatment by medical and hospital personnel resulting in damage to the plaintiff" put defendant on notice of informed consent claim). But see Murrey v. United States, 73 F.3d 1448, 1453 (7th Cir. 1996) (requiring that the administrative claim "narrate facts from which a legally trained reader would infer a failure to obtain informed consent"). Mr. Shamon's administrative claim meets this standard, and his amendment should therefore be allowed.

### B. The Defendant Will Suffer No Prejudice As a Result of Mr. Shamon's Amendment.

As set forth above, Mr. Shamon's informed consent claim arises from the <u>exact</u> factual circumstances set forth in both his original administrative claim and his original complaint. Moreover, the issued of informed consent was dealt with extensively by both parties during the course of discovery. As a result the allowance of Plaintiff's Motion to Amend will not necessitate any additional discovery. In short, the Defendant will suffer absolutely no prejudice whatsoever if the Court allows Plaintiff's Motion to Amend.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend his Complaint to add a claim for lack of informed consent

Respectfully submitted,

RONALD SHAMON and
PATRICIAL SHAMON,

By their attorneys,

_____
Michael R. Perry (BBO #555300)
Halye A. Sugarman (BBO #646773)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108
(617) 423-0400

DATED: May 27, 2005
429289

## CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on this 27th day of May 2005, I served a copy of the foregoing Memorandum in Support of Motion to Amend Complaint on counsel for the Defendant, by first class mail, postage prepaid.

Damian W. Wilmot
Assistant U.S. Attorney
U.S. Attorney's Office
Department of Justice
John Joseph Moakley Federal Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210

_____
Halye A. Sugarman