```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                                      )
RONALD SHAMON and PATRICIA SHAMON,    )
     Plaintiffs,                      )
                                      )
v.                                    )  Docket No. 04cv11674-WGY
                                      )
UNITED STATES OF AMERICA,             )
     Defendant.                       )
_____)
```

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S
### MOTION FOR LEAVE TO AMEND COMPLAINT

The United States of America respectfully opposes Plaintiff Ronald Shamon's Motion for Leave to Amend the Complaint to include a claim of lack of informed consent. This new claim, which Plaintiff proposes to bring under the Federal Torts Claims Act ("FTCA"), is jurisdictionally barred as Mr. Shamon failed to file a timely administrative claim asserting lack of informed consent with the Department of Veteran Affairs ("VA"). The Court therefore lacks subject matter jurisdiction over this proposed claim. Accordingly, the Court must deny Mr. Shamon's motion because his proposed amendment to include a claim for lack of informed consent is futile.

### RELEVANT FACTS

On December 4, 2003, Mr. Shamon submitted to the VA a "Claim for Damage, Injury, or Death" - also referred to as a Standard Form 95 ("SF 95"). Exhibit A. On that Form, Mr. Shamon describes the hospitals procedures he believes were conducted negligently, beginning with a sigmoidoscopy examination performed

by Dr. Chi Zhang on December 7, 2001. Indeed, Mr. Shamon's narrative begins with Dr. Zhang inserting the sigmoid scope. No where on the SF 95 does Mr. Shamon allege that the VA failed to informed him of the risk associated with a sigmoidoscopy procedure; instead he claims that the VA negligently performed the procedure by perforating his rectum. Indeed, the SF 95 presents no facts from which one could reasonably infer a claim that the VA failed to obtain Mr. Shamon's informed consent.

On May 17, 2004, Mr. Shamon's counsel, Attorney Michael Perry, sent the VA a letter attempting to amend Mr. Shamon's administrative claim to include his wife's claim for loss of consortium. Exhibit B. This letter presents no additional information that includes or even alludes to a lack of informed consent issue. Subsequent to this letter, Attorney Perry and VA Attorney Rita S. Mandosa engaged in settlement discussions concerning Mr. Shamon's claim. Affidavit of Attorney Rita S. Mandosa ("Mandosa Aff.") at ¶9, attached hereto as Exhibit C. All of Plaintiff's written correspondence and telephone conversations with the VA, including a purported medical expert's evaluation of the VA's treatment of Mr. Shamon, focused exclusively on Plaintiff's theory that Dr. Zhang deviated from the standard of care during the sigmoidoscopy examination when he allegedly perforated Mr. Shamon's rectum with the sigmoid scope. Mandosa Aff. at ¶10. Attorney Perry never indicated, or even

hinted, that Mr. Shamon was asserting a claim for lack of informed consent. Mandosa Aff. at ¶13. Therefore, the VA never had an opportunity to evaluate such a claim and did not consider such a claim during its determination of whether it should settle Mr. Shamon's negligence claim presented in the SF Form. Mandosa Aff. at ¶13. Notably, the VA provided Attorney Perry with a copy of Mr. Shamon's VA medical records which include a post-examination note stating:

> Procedure reviewed with patient regarding: prep, procedure for flexible sigmoidoscopy, and patient expectations. Patient verbalized understanding of procedure; consent signed and witnessed.

Exhibit D. Plaintiffs, until now, never challenged this record. Mandosa Aff. at ¶12. The VA ultimately denied Mr. Shamon's claim on June 30, 2004. Mandosa Aff. at ¶14.

## ARGUMENT

Once the defendant has filed a responsive pleading, "a party may amend . . . only by leave of court . . . [which] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Despite this rather forgiving standard, 'in considering a motion for leave to amend [] the trial court must first consider whether the proposed new claims are futile, that is, whether they would be subject to dismissal for failure to state a claim.'" MacNeill Eng'g Co. v. Transport, Ltd., 59 F. Supp. 2d 199, 200-201 (D. Mass. 1999) (citation omitted); see also Hatch v. Dep't. for

Children, 274 F.3d 12, 19 (1st Cir. 2001) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters.") (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir., 1990) (overruled on unrelated grounds by Educadores Puertorriguenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004))). Plaintiff's proposed amendment to include a claim for lack of informed consent is futile because the Court lacks subject matter jurisdiction over such a claim.

The law is well settled that the United States of America, as a sovereign, may be sued only to the extent that it has consented to suit by statute. E.g., United States v. Mitchell, 445 U.S. 535, 538 (1980). A waiver of this immunity must be explicit. E.g., Honda v. Clark, 386 U.S. 484, 501 (1967).

The FTCA, 28 U.S.C. § 1346(b), provides for a limited waiver of sovereign immunity by authorizing, with certain exceptions, suits sounding in tort against the United States. This waiver is limited, however, by section 2675(a), which provides that no tort action shall be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2. The purpose of this requirement is to permit the agency "'to evaluate and settle the claim at an early stage, both for the possibility of financial economy and for the sake of relieving

the judicial burden of FTCA suits.'"  Swift v. United States, 614 F.2d 812, 814 (1st Cir. 1980) (quoting Kornbluth v. Savannah, 398 F. Supp. 1266, 1268 (E.D.N.Y. 1975)); see also Reilly v. United States, 863 F.2d 149, 173 (1st Cir. 1988).  A tort claim against the United States is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b); see also 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2.

The administrative claim requirements are jurisdictional in nature and cannot be waived.  Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003); Richman v. United States, 709 F.2d 122, 124 (1st Cir. 1983); Booten v. United States, 95 F. Supp. 2d 37, 42 (D. Mass. 2000).  Thus, if any plaintiff has not filed a timely administrative claim before bringing suit, the Court must dismiss that plaintiff's claim for lack of subject matter jurisdiction.  Skwira, 344 F.3d at 71; Eveland, III v. Director of Central Intelligence Agency, 843 F.2d 46, 50 (1st Cir. 1988); Chatman v. Hernandez, 805 F.2d 453, 457 (1st Cir. 1986); Richman v. United States, 709 F.2d at 124.  In Massachusetts, while a cause of action for lack of informed consent sounds in negligence, it is a separate and independent claim of negligence. See, e.g., Roukounakis v. Messer, 63 Mass. App. Ct. 482, 484-487 (2005).

The Plaintiff primarily relies on a single circuit case and

misrepresents the record evidence in his attempt to inject an untimely lack of informed consent claim into the case at bar. Plaintiff neglected to inform the Court that the Fifth Circuit stands alone in its view that "by its very nature, [an] informed consent claim is included in the claimant's allegation of [medical] negligence in [his or her] administrative claim." Frantz v. United States, 29 F.3d 222, 224 (5th Cir. 1994). On the other hand, the more logical majority view states that an administrative claim must narrate facts from which a legally trained reader reasonably could infer a failure to obtain informed consent. Murrey v. United States, 73 F.3d 1448, 1453 (7th Cir. 1996); see also Goodman v. United States, 298 F.3d 1048, 1055-56 (9th Cir. 2002); Bush v. United States, 703 F.2d 491, 495 (11th Cir. 1983). In fact, the Seventh and Ninth Circuits explicitly rejected the Fifth Circuit's view, holding that it is "too broad and may give inadequate respect to the values of fair notice." Goodman, 298 F.3d at 1055-1056; see also Murrey, 73 F.3d at 1453 ("We do not go so far as the Fifth Circuit . . . the administrative claim must narrate facts from which a legally trained reader would infer a failure to obtain informed consent.").

In Murrey, the Seventh Circuit found that the plaintiff's administrative complaint "include[d], or at least allude[d] to, the issue of informed consent" because it stated that the

plaintiff was fearful of surgery and that the doctors "assured him and his family that surgery was the only available therapy, and that it would extend his life by 15 years." Murrey, 73 F.3d at 1451-53.  In Goodman, the Ninth Circuit found that the plaintiff's administrative complaint - prepared without the assistance of counsel - adequately gave the government notice of a inform consent claim because it stated, inter alia, that "things . . . were overlooked in the procedure . . . ." Goodman, 298 F.3d at 1056-57.

There are no similarities between Mr. Shamon's administrative complaint and the complaints presented to the government in the Murrey and Goodman cases.  Mr. Shamon's administrative complaint is more akin to the appellant's complaint in the Bush case.  In Bush, similar to the instant action, neither the appellant's administrative complaint or her attached medical expert's report challenged the consent form signed by the tort victim prior to the surgery.  Bush, 703 F.2d at 495.  Moreover, the administrative complaint did not allege that the VA's doctors failed to disclose to the tort victim the risks associated with the surgery.  Id.  The Court held, therefore, that "the VA was not properly appraised of its potential liability [for lack of informed consent], and had no opportunity to investigate the claim.  Because the appellant failed to comply with the statutory requirement of § 2675

mandating presentation of the claim to the agency, we agree with the district court that it lacked jurisdiction over this specification of liability." Id.

As Mr. Shamon points out, the VA has a publication that it uses to inform its patients about a flexible sigmoidoscopy procedure, how the patient must prepare for the procedure, what can be expected during the procedure, what happens after the procedure, and what are the possible complications of the procedure. Exhibit E. Nurse Dolores Kirby testified that this publication, along with a consent form, is provided to a patient scheduled to undergo a sigmoidoscopy examination prior to the patient's arrival at the hospital. Deposition of Dolores Kirby, RN ("Kirby Depo.") at p. 26, attached hereto as Exhibit F. The consent form also lists possible complications of a sigmoidoscopy procedure. Exhibit G.

Now before this Court, Mr. Shamon for the first time claims that the VA never explained or provided him any informational materials about a sigmoidoscopy procedure and its possible risks. Deposition of Ronald Shamon at pp. 43 - 45, attached hereto as Exhibit H. He even claims that he never signed a consent form before the procedure. Id. at p. 45. Coincidently, Mr. Shamon first raised this issue after the VA, in response to Plaintiffs' document requests, was unable to locate the consent form Mr. Shamon signed.

Because of the VA's inability to locate this specific document, Plaintiff makes the specious statement that "the Defendant has failed to produce <u>any</u> documentation reflecting the fact that the plaintiff received the appropriate informed consent prior to the procedure." Plaintiff's Memorandum Support of Motion for Leave to Amend complaint, p. 6. This statement is simply untrue. Indeed, a note dated October 25, 2001, contained in Mr. Shamon's VA medical records - which Plaintiff first received while his administrative complaint was pending with the VA - states, in relevant part:

> . . . Unable to reach patient directly at his home tel number, so left message on his answering service regarding upcoming flexible sigmoidoscopy appointment on 12/07/01 at 11:30 AM at JP VA. Pt informed on message that he will receive letter about this appt with info about the flex sig procedure and how to prepare for it. . . .

Exhibit I. Another note dated October 30, 2001 - which Plaintiff also received while his administrative complaint was pending with the VA - states in relevant part:

> . . . Procedure pt scheduled for: . . . FLEX SIG . . . 12-7 . . . INSTRUCTIONS MAILED TO PATIENT . . . Re-evaluate patient/significant other's knowledge on day of exam. . . .

Exhibit I. As stated above, also contained in Mr. Shamon's VA medical records is a post-examination note dated December 7, 2001 - the date of Mr. Shamon's sigmoidoscopy examination - stating, in relevant part:

> . . . Procedure reviewed with patient regarding: prep, procedure for flexible sigmoidoscopy, and patient expectations. Patient verbalized understanding of

procedure; consent signed and witnessed. . . .
Exhibit D.  Nurse Dolores Kirby testified that she entered this note into the VA's computer system on December 7, 2001.  Kirby Depo. at p. 20.

Plaintiff hopes to undermine the record evidence supporting the fact that the VA obtained Mr. Shamon's inform consent by arguing that Mr. Shamon's treating physicians and nurse testified during their depositions that they had no recollection of obtaining Mr. Shamon informed consent prior to the procedure.  Plaintiff's Memorandum Support of Motion for Leave to Amend complaint, p. 6.  This is a mis-characterization of their testimonies.  Because of the sheer volume of veterans the VA treats, which include sigmoidoscopy procedures, and the fact that Mr. Shamon's sigmoigoscopy procedure occurred over three years ago, Doctor Zhang and Nurse Kirby understandably had no specific recollection of Mr. Shamon at all.  Deposition of Chi Zhang, MD, at p. 32-33, 38-41, attached hereto as Exhibit J; Kirby Depo. at p. 15-16.  It is commonsensical that the inability to recall specific details of treatments and conversations with patients is the precise reason why doctors and nurses take notes.  The notes, taken shortly after the event or consult, preserve the doctors' or nurse's recollection of what happened or what was said.  Moreover, Doctor Marcos Pedrosa testified that Dr. Zhang obtained Mr. Shamon's informed consent.  Deposition of Marcos Pedrosa at

p. 33, attached hereto as Exhibit K.  Plaintiff has offered no reason as to why the Court should disregard the record evidence or why the Plaintiff has never challenged it until now.

In sum, like in <u>Bush</u>, Mr. Shamon never challenged his VA medical records stating that it obtained his inform consent prior to conducting the sigmoidoscopy procedure.  Moreover, his administrative complaint did not allege that the VA's doctors failed to disclose to him the risks associated with a sigmoidoscopy procedure.  Therefore,"the VA was not properly appraised of its potential liability [for lack of informed consent], and had no opportunity to investigate the claim." <u>Bush</u>, 703 F.2d at 495.  Mr. Shamon failed to comply with the statutory requirements of 28 U.S.C. §§ 2401(b) and 2675(a) by not timely raising a claim for lack of informed consent.  The Court therefore lacks subject matter jurisdiction over Mr. Shamon's proposed claim.  Accordingly, the Court must deny Mr. Shamon's motion because his proposed amendment to include a claim for lack of informed consent is futile.

<u>CONCLUSION</u>

Accordingly, for the reasons articulated above, the Court should deny Plaintiff's Motion for Leave to Amend Complaint.

                         Respectfully submitted,

                         MICHAEL J. SULLIVAN
                         United States Attorney

By:  <u>/s/ Damian W. Wilmot</u>
     DAMIAN W. WILMOT
     Assistant U.S. Attorney
     Moakley Federal Courthouse
     One Courthouse Way, Suite 9200
     Boston, MA 02210
     (617) 748-3398

Dated: June 9, 2005