UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SHAMON )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>) | Civil Action No. 04-11674-WGY |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION, *IN LIMINE*, TO LIMIT PLAINTIFF'S POTENTIAL RECOVERY

Plaintiff, Ronald Shamon ("Shamon"), hereby opposes the Motion, *in limine*, of the Defendant, United States of America to limit Plaintiff's Potential Recovery to $500,000.00 (Docket No. 35, filed 12/9/05). In its motion, the Defendant asks the Court to draw an unsupportable inference with respect to Shamon's Amended Administrative Claim.[1] Specifically, the Defendant argues that the voluntary dismissal of Patricia Shamon's loss of consortium claim should result in a pro rata reduction of the Plaintiffs' collective administrative damage claim. As set forth below, there is absolutely no legal authority that supports this tenuous proposition. In further opposition to this Motion, Shamon states as follows:

### FACTS RELATING TO THE DEFENDANT'S MOTION

On December 5, 2002, Shamon filed an administrative claim with the Department of Veteran's Affairs on Standard Form 95. Shamon initially claimed damages of $500,000.00 (the "Initial Claim"). While the administrative process was still open and pending, Shamon amended

---

[1] The Motion is also plainly premature. If there is any ambiguity whatsoever with respect to the maximum damages recoverable in this action, that ambiguity ought to be resolved only when a judgment enters in Shamon's favor. Until that time, any opinion rendered by the Court will be purely advisory.

his administrative claim on May 14, 2004, adding Patricia Shamon as an additional claimant. This May 14 letter goes on to state: "In addition, Ronald and Patricia Shamon amend the amount of their claims to $1,000,000 resulting from the injuries they have suffered. ( See Exhibit A, the "Amended Administrative Claim"). Following the submission of this Amended Administrative claim, Patricia Shamon voluntarily dismissed her claim.

## ARGUMENT

In its Motion, the Defendant takes the remarkable position that the Court should disregard the properly amended administrative claim simply because Mrs. Shamon is no longer a party plaintiff. This proposition invites the Court to make a great leap of faith, unsupportable in law or in fact, respecting the allocation of claims between Mr. and Mrs. Shamon in the Amended Administrative Claim. The Court should decline this invitation.

A.   **The Amended Administrative Claim was Timely.**

The Federal Tort Claims Act ("FTCA") requires claimants to notify an agency of the United States before initiating suit. *See* 28 U.S.C. §2675; 28 C.F.R. §14.2. The regulations governing tort claims in general and claims against the Department of Veterans' Affairs specifically both provide that a claim "may be amended by the claimant at any time prior to final agency action." 28 Code Fed. Regs. §14.2(c); 38 Code Fed. Regs. §14.604(c). In this instance, there is no dispute that the Amended Administrative Claim filed by the plaintiffs was timely. Indeed, the Defendant's Motion does not remotely suggest that there had been final agency action prior to May 14, 2004.

Once the Initial Claim was amended, the Initial Claim became a mere nullity, serving only in this case to establish that Shamon's suit was timely presented. *See Keene Corp. v. U.S.*, 700 F.2d 836, 840 (2d Cir. 1983) ("Since Keene's Amended Notice of Claim was filed prior to

final administrative disposition of the September Notice, it totally supercedes that initial Notice"); *Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 412 (1st Cir. 2000). The premise of the Defendant's Motion is that the subsequent voluntary dismissal of Mrs. Shamon's claim somehow revives the Initial Claim. This proposition is simply unsupportable, since the Amended Administrative Claim was proper in all respects and completely supplanted the Initial Claim.

**B.    The Amended Administrative Claim was Adequate.**

The purpose of the administrative claims process is "to furnish notice to the government sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all." *Lopez v. United States*, 758 F.2d 806, 809-810 (1st Cir.1985). A claimant satisfies the FTCA's notice requirement by providing a claim form, as Shamon did for his Initial Claim, or by providing other written notification which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought, as the Amended Administrative Claim plainly did. *Santiago-Ramirez v. Sec'y of Dept. of Def.*, 984 F.2d 16, 19 (1st Cir.1993) (internal quotation marks omitted). The First Circuit "approaches the notice requirement leniently, recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims." *Id.*; *see also Skwira v. U.S.*, 344 F.3d 64, 70 (1st Cir. 2003); *Olmeda v. U.S.*, 2005 WL 2491530, *2 (D. Puerto Rico October 7, 2005).

The Defendant does not dispute that a husband and wife may submit a single administrative claim, nor could it. *See e.g., Eskine v. U.S.*, 1995 WL 495903, *1 (E.D.La. Aug. 18, 1995); *Champagne v. United States*, 573 F.Supp. 488 (E.D.La. 1983); *Johnson v. United States*, 496 F.Supp. 597, 601 (D.Mont. 1980); *Frantz v. United States*, 791 F.Supp. 445, 447-48

(D.Del. 1992); *Hilburn v. United States*, 789 F.Supp. 338 (D.Hawaii 1992); *Dondero v. United States*, 775 F.Supp. 144, 148 (D.Del. 1991).

Likewise, there can be no question but that a lump sum amount for multiple claimants satisfies the "sum certain" requirement. *Eskine*, 1995 WL 495903, *2; *citing Lunsford v. United States*, 570 F.2d 221, 225 (8th Cir. 1977); *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 615 (9th Cir. 1978); *Lundgren v. United States*, 810 F.Supp. 256, 258 (D.Minn. 1992*); Campbell v. United States,* 795 F.Supp. 1118, 1121-22 (N.D.Ga. 1990); *Locke v. United States*, 351 F.Supp. 185 (D.C.Hawaii 1972). At least as of May 14, 2004, the Defendant was aware that its exposure was, at a minimum, $1,000,000.00, however that amount was allocated between and among Mr. and Mrs. Shamon.

**C.     The Claim Amount is Clearly Stated.**

It is beyond question that the May 17, 2004, letter was designed not only to add a consortium claim on behalf of Mrs. Shamon, but also to amend the amount the Plaintiffs' claims. A plain reading of this letter reflects Plaintiffs' intent to increase the amount of Plaintiffs' claims to a million dollars each. At a minimum, the letter increases the amount of the Plaintiffs' collective claim to a million dollars. Indeed, the government adopts this reading in its motion when it states: "with the addition of Mrs. Shamon's loss of consortium claim, Mr. and Mrs. Shamon collectively seek $1,000,000." (Docket No. 35 at 5). Defendant adds three words however, "or $500,000 each," without any explanation of their derivation, aside from counsel's own subjective understanding of the letter. Moreover, this subjective understanding, along with Defendant's declaration that it "processed" Shamon's claim as one for $500,000, or Mr. and Mrs. Shamon's claims for $500,000 each, is belied by Defendant's own VA Tort Claim Information

4

Data Collection Form, attached as Exhibit B hereto, which plainly establishes that the Defendant processed the claim for $1,000,000.

The Defendant's Motion requires the Court to engage in mental gymnastics, assuming facts that are not in evidence and concluding, as a great leap of faith, that the Amended Administrative Claim implicitly set forth a severable claim on behalf of Mrs. Shamon in an amount identical to her husband's. Among the many problems with this exercise is the fact that even the Defendant never considered the claims to be co-equal, assigning "primary claimant" status to Mr. Shamon alone. *See* Exhibit A.

Ultimately, Mrs. Shamon's claims were not presented to this Court for a resolution. On this record, without any probable evidence having been offered, the Court cannot possibly determine the value of that claim at the time the Amended Administrative Claim was filed. It is just as likely that it was worth $0.01 as any other figure. Indeed, the fact that Mrs. Shamon's claim was abandoned before trial suggests that it was not equivalent to that of her husband.

In the end, the Defendant's Motion is nothing more than a thinly-veiled attempt to capitalize on the coincidental relationship of the value of the Initial Claim to the Amended Administrative Claim. Certainly if the Amended Administrative Claim had alleged damages of $1,500,000.00, the Defendant would not claim that Mrs. Shamon's damages were double her husband's. Likewise, if the Amended Administrative claim set forth $750,000.00, the Defendant would not take the position that Mr. Shamon had reduced his claim to half of that amount. In short, the Defendant's Motion is based upon nothing more than inference and innuendo, each of which are insufficient and inappropriate grounds to reduce Shamon's potential recovery.

Although there is ample authority for increasing the cap on a plaintiff's damages imposed by the "sum certain" stated in an administrative claim in certain circumstances, *e.g.*, 28 U.S.C. §

5

2675(b), there is absolutely no authority (and Defendant cites none) for reducing the cap in circumstances where one of the claimant's claims is dismissed (either voluntarily or involuntarily).

## CONCLUSION

For the foregoing reasons, Plaintiff Ronald Shamon respectfully requests that the Defendant's Motion, *in limine*, to Limit Plaintiff's Damages be DENIED, or in the alternative, that consideration of that Motion be stayed until such time as Shamon is awarded a judgment in his favor.

Respectfully submitted,

RONALD SHAMON,

/s/ Michael R. Perry
Michael R. Perry (BBO #555300)
HANIFY & KING, P.C.
One Beacon Street
Boston, MA 02108
(617) 423-0400

DATED:

*(442435)*

# Exhibit A

Case 1:04-cv-11674-WGY    Document 38    Filed 12/14/2005    Page 7 of 13

**HK** | **Hanify&King**

MICHAEL R. PERRY
617-226-3464
mrp@hanify.com

May 17, 2004

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Rita S. Mandosa, Esq.
Department of Veterans Affairs
Office of Regional Counsel
200 Springs Road, Bldg. 61
Bedford, MA 01730

Re: Ronald Shamon v. U.S. Dep't of Veterans Affairs

Dear Ms. Mandosa:

By this letter, Ronald Shamon amends his claim filed on Standard Form 95 with the Department of Veterans' Affairs, Office of Regional Counsel on December 5, 2002. For ease of reference, a copy of Mr. Shamon's filing is included herewith.

In addition to the claims asserted in Mr. Shamon's December 5, 2002, filing, Patricia Shamon, the wife of claimant Ronald Shamon, hereby submits a claim for loss of consortium. As a direct result of the negligence of the doctors and medical staff of the Department of Veterans' Affairs, Patricia Shamon has lost the love, companionship, care, counsel and affection of plaintiff, Ronald Shamon. In addition, Ronald and Patricia Shamon amend the amount of their claims to $1,000,000 resulting from the injuries they have suffered.

If there any questions concerning this amendment, please contact me.

Sincerely,

Michael R. Perry

MRP/mld
Enclosure
395206

Professional Corporation
Counsellors at Law

One Beacon Street
Boston, Massachusetts 02108-3107
Tel: 617-423-0400
Fax: 617-423-0498
www.hanify.com

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Office of Regional Counsel (02) U.S. Department of Veterans Affairs 200 Springs Road, Building 61 Bedford, Massachusetts 01730 | Ronald R. Shamon      Michael Perry 8 Sanderson Drive    Hanify and King Plymouth, MA 02360   1 Beacon St. Boston, MA 02108 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH 04-27-36 | 5. MARITAL STATUS M | 6. DATE AND DAY OF ACCIDENT 12-07-01 | 7. TIME (A.M. or P.M.) 8:00 a.m. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

At the Jamaica Plain, Massachusetts, VA at 8:00 a.m. on December 7, 2001, during Dr. Zhang's first attempt to perform a sigmoidoscopy on me, the scope hurt so bad that I screamed out loud, "It hurts!" He replied, "I'm sorry." He then put the scope in a second time, and after several minutes he yelled out, "I go too high! I go too high!" His nurse ran out of the room to get Dr. Pedrosa, who came into the room and yelled out, "Stop! Stop!" With the scope still inside of me, Dr. Pedrosa said to me and to Dr. Zhang that he was taking over, explained to Dr. Zhang that the lens had feces on it and

See attached continuation.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See attached continuation.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| Patricia Shamon | 8 Sanderson Drive, Plymouth, MA 02360 |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| N/A | $500,000.00 | --- | $500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| *Ronald R Shamon* | 508-833-9359 | 12/04/03 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109
Previous editions not usable.
Designed using Perform Pro, WHS/DIOR, Jun 96

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## RONALD R. SHAMON
## CLAIM FOR DAMAGE CONTINUATION PAGES

Item 8 continued.

had to be removed to be cleaned before proceeding. Dr. Pedrosa cleaned the lens and reinserted the scope. While removing the scope, he explained to Dr. Zhang the procedure for removing feces from the sides of the colon by using the scope. As a result of this procedure there was a perforation of my intestine.

Within days of my sigmoidoscopy, because of pain from my anus, I was examined on 12/11/01 at Brockton VA by Dr. Tamler, who, despite my claim of pain, said that I have a rash on my anus. On 12/12/01 pain was more intense with high temperature. I was examined by Dr. Dickenson at Brockton VA, who ordered a blood workup and an ultrasound. They indicated two abscesses formed in my anus and an elevated white blood count. A catheter was inserted and I was transported to West Roxbury VA.

On 12/12/01 at West Roxbury VA I was operated on by Dr. Fitzpatrick and Dr. Moore. Dr. Fitzpatrick told me that my intestines were perforated, causing an infection for the past five to six days. He also stated that there is a third abscess up higher feeding down into the other two.

On 12/15/01 Dr. Fitzpatrick and Dr. Duke operated to expand the incisions. I was released on 12/21/01 with a catheter and on antibiotics and two shifts of visiting nurses to dress my wounds.

12/31/01. Post-operative visit to Dr. Benoit at Jamaica Plain VA. Taken off some medication. Prescribed, Tamsolosin. On 1/5/02 fainted in shower, struck head and was rushed to Jordan Hospital, Plymouth, Mass., for overnight observation. Visiting nurse called Dr. Burch at Brockton Hospital. Dr. Burch said, "They should not have put you on Tamsolosin. It lowers your blood pressure."

1/11/02. Visiting nurse noticed an infection on my wounds. Sent to Brockton VA, Dr. Aslanian, who noticed an infection on left side of wound, cleaned wound, and ordered antibiotics for me.

1/15/02. Dr. Duke at West Roxbury VA made an incision and packed the wound. On 1/29/02 Dr. Fitzpatrick examined me, said the wounds were healed, and took me off antibiotics.

2/5/02. I noticed a yellow discharge from my anus and contacted Dr. Fitzpatrick, who said to see him on February 12. On 2/12/02 Dr. Fitzpatrick was not in. I was examined by his assistant, Dr. Navarro, who noticed a pus pocket on the edge of my sphincter and yellow discharge. He squeezed out the pus. He asked for consult from a senior staff member, Dr. Gordon, who examined my anus. I asked both Doctors Navarro and Gordon if a pus pocket and yellow discharge weren't indicative of an infection, if I should be on antibiotics, and if I would need more surgery. Dr. Gordon stated, "No more operations or antibiotics are necessary." He then prescribed one to two weeks of daily fleet enemas, saying that would take care of my problem. I

R. R. Shamon claim Item 8 continued

met Dr. Fitzpatrick in the lobby, where I brought him up to date with my meeting with Dr. Navarro and Dr. Gordon and about the fleet enemas.

On 2/15/02 I was still in pain with yellow discharge and blood/pus from my anus. I called Dr. Fitzpatrick, who said to see him on February 19. On February 19 Dr. Fitzpatrick said, "Why did Dr. Gordon order fleet enemas? You're not an old woman." He didn't know why my sphincter muscle wasn't closing and said to exercise the sphincter muscle.

On February 24, 2002, I called Dr. Fitzpatrick and told him that I wanted a second opinion. He asked me to work with him a few more weeks and the problem would abate. I insisted on the second opinion. He gave me the name of Dr. Cima, whom I first saw on February 27. He kept me overnight and operated on me on February 28.

Dr. Cima found three abscesses up higher on my colon, inserted a Seton drain, inserted 18" Mallincrodt tube, found a 3 cm ulcer on the post rectal wall adjacent to the sphincter. The existing wounds were also reinfected and had to be reopened and drained.

On 3/1/02 during my recovery Dr. Fitzpatrick came to my room and said, "I'm sorry. I'm sorry. I should have looked up higher, should have seen it. You're in good hands with Dr. Cima."

As a result of all my treatment at the VA I've suffered a great deal of pain, medical procedures, and damages.

# Exhibit B

# VA TORT CLAIM INFORMATION SYSTEM
## DATA COLLECTION FORM

**PATIENT:** Shamon, Ronald R.

**SSN:** 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

## INJURED PERSON INFORMATION

**Injured Person:** Shamon, Ronald R.
**Date of Birth:** April 27, 1936

**Relationship to Patient:** Self

### Claimants
Shamon, Ronald R.    (Primary)
Shamon, Patricia

## CLAIMANT INFORMATION

**Relationship to Injured Person**
Self
Spouse

**Date of Incident:** 12/7/2001

### VA MEDICAL CENTERS
Boston MA VAMC

### VAMC SERVICES
112   Surgical

### SPECIALTY CODES
15   Gastroenterology

### ALLEGED NEGLIGENCE CODE:
250   Improper Performance Of Surgery

## INCIDENT INFORMATION

| Number | VISN | State |
|--------|------|-------|
| 523    | 1    | MA    |

**LOCATION OF INCIDENT IN VAMC**
Operating Suite

**INJURY CODE**
Surgery Related

**SEVERITY**
2   Major

*CONFIDENTIAL*

### ALLEGED NEGLIGENCE DESCRIPTION

PERFORATION OF INTESTINE DURING SIGMOIDOSCOPY, FOLLOWED BY REPEATED INFECTIONS, AND MULTIPLE CORRECTIVE SURGERIES AND HOSPITALIZATIONS FROM DECEMBER 2001 THROUGH MARCH 1, 2002.

## LEGAL INFORMATION

Bedford
12/4/2003
$1,000,000.00

(781) 687-3600

06/30/2004

Perry, Michael

### Tort Status
06/30/2004   02   Claim Denied by Regional Counsel
12/04/2003   00   Administrative Tort Claim Pending

## REMARKS

Case No   22676